Jacqueline M. Simonovich, State Bar No. 319259
jsimonovich@weintraub.com
**weintraub tobin** chediak coleman grodin
LAW CORPORATION
475 Sansome Street, Suite 510
San Francisco, CA 94111
Telephone: 415.433.1400
Facsimile: 415.433.3883

Attorney for Plaintiff N.G.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| N.G.,<br><br>    Plaintiff,<br><br>    vs.<br><br>UR M. JADDOU, in her official capacity as Director of United States Citizenship and Immigration Services;<br><br>RENA BITTER, in her official capacity as Assistant Secretary of State for Consular Affairs,<br><br>    Defendants. | Case No. **'23CV1636 BEN BGS**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

1. Plaintiff N.G., who came to the United States as a refugee fleeing Pakistan, files this lawsuit seeking prompt adjudication of his family reunification applications to have his wife and their sons join him in the United States.

2. In August 2018, soon after arriving in the United States as a refugee, Plaintiff filed "follow-to-join" family reunification applications with the U.S. Citizenship and Immigration Services ("USCIS") to be reunited with his wife and sons, from whom he had been separated in the course of fleeing danger in Pakistan.

3. With the Refugee Act of 1980, Congress created the statutory pathway for family reunification to address the issue of family separation that commonly occurs during a refugee's journey to be resettled in the United States.

4. The Refugee Act guarantees refugees in Plaintiff's situation the right to petition for family reunification with their spouse and unmarried minor children and the right to bring them to the United States, so long as the petitioner establishes the family connection and the beneficiaries are found to be admissible.

5. When Plaintiff started the family reunification process by filing applications in 2018, Plaintiff's four sons were fifteen, twelve, ten, and six years old.

6. More than five years have passed since USCIS received Plaintiff's family reunification applications in or around August 2018. But Plaintiff is still waiting for his wife and sons to join him in the United States.

7. During the years of separation Plaintiff has missed watching his sons grow up day by day.

8. Plaintiff worries about his family back in Pakistan, and he wants to be present in the everyday lives of his sons and his wife. But, due to Defendants' failure to adjudicate Plaintiff's family reunification applications for more than five years, Plaintiff is still waiting for his wife and sons to join him.

9. Defendants' failure to adjudicate Plaintiff's applications has thus put on indefinite hold the reunification of his family.

10. Plaintiff now seeks an order from this Court pursuant to the Administrative Procedure Act ("APA") and a writ of mandamus pursuant to the Mandamus Act to compel Defendants to promptly adjudicate his family reunification applications, as well as declarations that Defendants' delay in adjudicating these applications is unreasonable under the APA and that Defendants' conduct has violated his due process rights under the Fifth Amendment to the United States Constitution.

## THE PARTIES

11. Plaintiff N.G. is a U.S. citizen residing in California.

12. Defendant Ur M. Jaddou is sued in her official capacity as Director of USCIS, a component agency of the Department of Homeland Security ("DHS"). Defendant Jaddou directly oversees USCIS's operations, including processing and adjudication of Plaintiff's family reunification applications.

13. Defendant Rena Bitter is sued in her official capacity as Assistant Secretary of State for Consular Affairs, a component agency of the U.S. Department of State. DHS has delegated certain authority over the processing and adjudication of family reunification applications to Consular Affairs. Defendant Bitter directly oversees all U.S. embassies, including the U.S. Embassy in Islamabad, which is responsible for certain stages of the processing and adjudication of Plaintiff's family reunification applications.

## JURISDICTION

14. This is a civil action brought to redress the deprivation of rights, privileges and immunities secured to Plaintiff to compel Defendants to perform a duty Defendants owe to Plaintiff.

15. This Court has subject matter jurisdiction over claims arising under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, 5 U.S.C. § 706, and the Fifth Amendment to the United States Constitution. *See* 28 U.S.C. § 1331 (U.S. courts have federal question jurisdiction for cases arising under federal law).

16. The Mandamus Act independently grants district courts original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to a plaintiff. 28 U.S.C. § 1361. The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

17. This Court has additional remedial authority to grant declaratory relief pursuant to the Declaratory Judgment Act. 28 U.S.C. §§ 2201 *et seq*.

18. Relief is requested pursuant to said statutes and authorities as well as 5 U.S.C. § 555(b).

## VENUE

19. Venue is proper in this Court under 28 U.S.C. §§ 84(c) and 1391(e)(1). Plaintiff resides in the Southern District of California. Defendants are agencies of the United States or an officer of the United States sued in her official capacity. No real property is involved in this action.

## FACTUAL BACKGROUND

### Plaintiff's Separation from his Family and Passages to the United States

20. Prior to arriving in the United States as a refugee, Plaintiff lived with his family in Pakistan.

21. Plaintiff and his wife, as well as their respective families, are from the same village in Pakistan.

22. Plaintiff and his wife were married more than twenty years ago in January 2001. Plaintiff and his wife have five sons.

23. In or around 2013, the Pakistani Taliban offered Plaintiff a position.

24. Plaintiff refused. Due to his refusal to join the Taliban, Plaintiff began to receive death threats.

25. Plaintiff fled Pakistan in or around April 2013 because he feared for his safety due to threats from the Pakistani Taliban.

26. In the course of seeking a safe place to live, Plaintiff became separated from his wife and their four sons, the youngest of whom was just around one year old at the time.[1]

27. Plaintiff fled to Nauru, where he waited for years for his refugee application to be processed.

28. In June 2018, Plaintiff arrived in the United States as a refugee.

29. To reunite with his wife and children, Plaintiff timely filed family reunification applications soon after arriving in the United States.

**Harm to Plaintiff's Family's Health and Human Welfare Caused by Separation**

30. Plaintiff currently lives in California, where he has obtained employment, such as by working for rideshare companies.

31. Plaintiff's wife and sons still live in Pakistan, where they have remained since Plaintiff fled the country to seek safety.

32. Plaintiff is the sole breadwinner of his family and sends money back to Pakistan to financially support his wife and sons.

33. Plaintiff's family members have experienced challenges due to the separation that has gone on for years.

34. The loneliness of being away from his family in the United States has been very difficult for Plaintiff.

35. Plaintiff often thinks of his family, and his "heart aches" without them. Plaintiff wishes that he could be with his wife and sons day-to-day.

36. Instead, his wife has to raise their sons without Plaintiff by her side.

37. Plaintiff tries to speak with his wife and sons back in Pakistan often.

38. From July 2020 to October 2020, Plaintiff traveled to Pakistan, where he

---

[1] Plaintiff's fifth son was born in 2021. *See infra* ¶ 42.

was able to temporarily reunite with his wife and children.

39. Prior to that trip, Plaintiff had not seen his family in person since fleeing Pakistan over seven years earlier.

40. Plaintiff was overjoyed to see his family after so many years apart.

41. But this visit was also a difficult reminder of just how long Plaintiff's family has been separated.

42. During this trip, Plaintiff's wife became pregnant with their fifth son, who was born in 2021. Because Plaintiff's family reunification applications have been pending for so long, his youngest son was born continents away in Pakistan.

43. He also returned to Pakistan in November 2021 to be temporarily reunited with his family.

44. This visit was another difficult reminder of how many years Plaintiff's family has waited to join Plaintiff in the United States.

45. During this trip, Plaintiff got to meet his fifth son for the first time in person, after missing his wife's pregnancy and his fifth son's birth as well as his first formative months of life.

46. Back in California, Plaintiff misses his wife and sons. He worries about them, being so far away from him in Pakistan.

47. Plaintiff hopes that his refusal to join the Pakistani Taliban does not endanger his wife and sons or threaten their wellbeing.

## The Family Reunification Application Process

48. Congress, through the Immigration and Nationality Act ("INA"), grants the Executive Branch broad authority over immigration. *See* 8 U.S.C. § 1101.

49. The INA specifically charges the Secretary of Homeland Security with the administration and enforcement of immigration laws. *Id*. § 1103(a)(1). The Secretary has delegated this authority to an agency within DHS, USCIS. *See* 8 C.F.R. §§ 2.1, 100.1.

50. USCIS is thus the government entity primarily responsible for processing visa applications, as well as applications for other immigration benefits. *See id.* § 204.2.

51. Although the decision of whether to admit a particular individual as a refugee is typically discretionary, the family reunification application process is unique.

52. The follow-to-join statute creates a non-discretionary entitlement to admission for spouses and unmarried children of refugees who have met the eligibility requirements and who are not subject to any applicable inadmissibility grounds. *See* 8 U.S.C. § 1157(c)(2)(A) ("A spouse or child . . . of any refugee . . . *shall . . . be entitled to the same admission status as such refugee if . . . following to join[] such refugee*") (emphasis added); *see also* 8 C.F.R. § 207.7.

53. The follow-to-join statute reflects Congress' considered judgement that family reunification is an important goal of U.S. refugee law.

54. The family reunification application process consists of two stages: domestic and international processing.

55. In the domestic processing stage, the refugee in the United States submits a separate Form I-730 ("Refugee/Asylee Relative Petition") to USCIS for each eligible family member. The refugee petitioner must demonstrate that: (1) they entered the United States as a refugee; (2) the proposed beneficiary is an eligible spouse or unmarried minor child; and (3) the petition is being filed within two years of the petitioner's admission to the United States as a refugee. *See* 8 C.F.R. § 207.7(d), (e).

56. If USCIS determines that the petition is complete and timely, and that the petitioner and beneficiary appear to be eligible for this immigration benefit, USCIS approves the petition pending an admissibility determination of the petition's beneficiary.

57. USCIS then sends the approved petition to the National Visa Center

("NVC"), which is within the State Department, for the next stage of processing.

58. In the international processing stage, NVC forwards the petition overseas for further processing.

59. USCIS is responsible for final adjudication of family reunification petitions pursuant to 8 U.S.C. § 1157(c) and 6 U.S.C. § 271(b)(3). In some instances, however, USCIS has delegated this authority to the State Department.

60. The petition is either forwarded to a USCIS International Office ("IO") or U.S. Embassy (together, "overseas post"), depending on the geographic location of the petition's beneficiary.

61. During this stage, the overseas post confirms that the beneficiary of the approved petition is eligible to "follow to join" their spouse or parent and be admitted to the United States as a refugee.

62. To facilitate these determinations, the overseas post conducts an interview of the beneficiary.

63. The beneficiary's biometric fingerprints are typically collected at the interview.

64. Before final approval, a beneficiary must complete a medical examination and clear security vetting and background checks.

65. With limited exceptions, a medical exam is valid for no more than 6 months from the examination date and must be repeated if it expires before entry to the United States.

66. After a beneficiary receives a final approval, the U.S. Embassy will issue a "Travel Packet" and a Boarding Foil, valid for 180 days, for the beneficiary's passport.

67. An approved Form I-730, or family reunification petition, is valid indefinitely so long as the qualifying relationship between the petitioner and beneficiary continues to exist and the petitioner's status has not been revoked. 8 C.F.R.

§ 207.7(f)(3).

68. Until the follow-to-join beneficiary is admitted into the United States, U.S. government agencies are able to introduce further delays in processing, for example by revoking a prior approval, canceling scheduled travel to the United States, and/or returning the petition to previous processing steps.

**Plaintiff's Family Reunification Applications**

69. In August 2018, Plaintiff timely filed family reunification applications for his wife and their sons.

70. In or around April 2019, Plaintiff received a receipt of the filing of each of his family reunification applications from the International Adjudication Support Branch of USCIS in Anaheim, CA.

71. In or around January 2022, the USCIS Los Angeles Asylum Office in Tustin, CA mailed Plaintiff a Notice of Transfer to the USCIS Asylum Vetting Center in Atlanta, GA for each of his family reunification applications.

72. In or around February 2022, the USCIS Asylum Vetting Center in Atlanta mailed Plaintiff a Notice of Receipt of Form I-730 for each of his family reunification applications.

73. More than five years after USCIS received Plaintiff's family reunification applications for his wife and children, but Plaintiff's applications have not even passed the domestic processing stage.

74. As set forth above, the continued family separation has been difficult for Plaintiff. He misses his wife and sons. He thinks often about his family back in Pakistan and he longs to have them by his side in California.

**FIRST CAUSE OF ACTION**

**Administrative Procedure Act ("APA")**

75. The foregoing allegations are repeated and incorporated as though fully set forth herein.

76. Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1157(c)(2), and the regulations governing family reunification applications, 8 C.F.R. § 207.7, Defendants have a nondiscretionary duty to adjudicate Plaintiff's family reunification applications. *See* 5 U.S.C. § 555(b); 8 U.S.C. § 1157(c)(2); 8 C.F.R. § 207.7.

77. The APA obligates Defendants to take these nondiscretionary actions within a "reasonable time," 5 U.S.C. § 555(b), and directs this Court to compel Defendants to take these actions when they are "unreasonably delayed," *id*. § 706(1). In addition, the APA requires agencies like DHS to "conclude a matter presented to it" within a reasonable time. 5 U.S.C. § 555(b).

78. More than five years have passed since USCIS received Plaintiff's family reunification applications. Defendants have failed to adjudicate Plaintiff's family reunification applications within a reasonable time, which caused and continues to cause irreparable harm to Plaintiff. *See* 5 U.S.C. § 555(b).

79. Plaintiff is entitled to relief pursuant to 5 U.S.C. § 706(1) of the APA compelling Defendants to promptly adjudicate Plaintiff's family reunification applications.

## SECOND CAUSE OF ACTION
### Writ of Mandamus

80. The foregoing allegations are repeated and incorporated as though fully set forth herein.

81. The Mandamus Act, 28 U.S.C. § 1361, vests this Court with original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a nondiscretionary duty owed to Plaintiff.

82. The All Writs Act, 28 U.S.C. § 1651, authorizes this Court to issue all writs "necessary or appropriate" in aid of its jurisdiction.

83. Pursuant to the INA, 8 U.S.C. § 1157(c)(2), and the regulations governing family reunification applications, 8 C.F.R. § 207.7, Defendants have a nondiscretionary duty to adjudicate Plaintiff's family reunification applications. *See* 5 U.S.C. § 555(b); 8 U.S.C. § 1157(c)(2); 8 C.F.R. § 207.7.

84. Plaintiff has brought this action because he has no other means to compel Defendants to perform the nondiscretionary duty that Defendants owe Plaintiff.

85. Plaintiff is entitled to a writ of mandamus under 28 U.S.C. §§ 1361 and 1651 and this Court's inherent equitable authority compelling Defendants to promptly adjudicate Plaintiff's family reunification applications.

## THIRD CAUSE OF ACTION

### Fifth Amendment – Due Process

86. The foregoing allegations are repeated and incorporated as though fully set forth herein.

87. The follow-to-join statute creates a non-discretionary entitlement to admission for spouses and unmarried children of refugees who have met the eligibility requirements and who are not subject to any applicable inadmissibility grounds. *See* 8 U.S.C. § 1157(c)(2)(A); 5 U.S.C. § 555(b); *see also* 8 C.F.R. § 207.7.

88. Plaintiff, a refugee and U.S. citizen residing in California, has a statutorily created entitlement to adjudication of his family reunification applications.

89. More than five years have passed since USCIS received Plaintiff's family reunification applications. Defendants' delay in adjudicating Plaintiff's family reunification applications constitutes a deprivation of Plaintiff's protected interest without due process.

90. Defendants' delay is egregious, and it is without any rational justification.

91. Defendants' conduct violates Plaintiff's due process rights protected by the Fifth Amendment of the United States Constitution.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants' delay in the adjudication of Plaintiff's family reunification applications is unreasonable under the APA and 5 U.S.C. § 706(1), and a violation of Plaintiff's due process rights under the Fifth Amendment.

2. Issue an order that requires Defendants to promptly adjudicate Plaintiff's family reunification applications. *See* 5 U.S.C. § 706(1).

3. Issue a writ of mandamus, pursuant to 28 U.S.C. §§ 1361 and 1651, directing Defendants to promptly adjudicate Plaintiff's family reunification applications.

4. Retain jurisdiction over this action and any attendant proceedings until Defendants have in fact adjudicated Plaintiff's family reunification applications, and have communicated the results of such adjudication to Plaintiff and the Court.

5. Award Plaintiff's attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

6. Award such other and further relief that the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: September 6, 2023

**weintraub tobin** chediak coleman grodin
Law Corporation

By: /s/ Jacqueline M. Simonovich
Jacqueline M. Simonovich
Attorneys for Plaintiff N.G.

*Of counsel*:

**PATTERSON BELKNAP WEBB & TYLER LLP**
Henry Ricardo
Katherine Brisson (*Pro Hac Vice forthcoming*)
Shelli Gimelstein (*Pro Hac Vice forthcoming*)
Alex Mahler-Haug (*Pro Hac Vice forthcoming*)
1133 Avenue of the Americas
New York, NY 10036
Telephone: 212.336.2000
Facsimile: 212.336.2222